**FILED**

JUL - 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

United States District Court

For the District of Columbia

Toby Cooper

43333 Crystal Lake St.

Leesburg, VA 20176

Ph: 703-443-9045

VS.

Case: 1:07-cv-01229
Assigned To : Sullivan, Emmet G.
Assign. Date : 7/9/2007
Description: Employ. Discrim.

Civil Act

JURY
ACTION

District of Columbia Lottery and Charitable Games Control Board

2100 Martin Luther King Jr. Avenue, S.E.

Washington, DC 20020-5731

Washington D.C. Government

Mayors Correspondence Unit

1350 Pennsylvania Ave., NW

Room 221

Washington, DC 20004

Office of the Chief Financial Office

441 4th St. N.W.

Suite 1150N

Washington, DC 20001

1

## COMPLAINT

I, Toby Cooper, am an African-American women that was employed as at                D.C. Lottery and Charitable Games Control Board (DCLB).  As an executive in the agency, I experienced sexual harassment  from Erich Coleman, and witnessed inappropriate behavior throughout the agency. I spoke out against the sexual harassment that took place against me, and others within the agency.  At least (3) other women  that worked at DCLB, came forward and confirmed inappropriate behavior conducted towards them by Mr. Coleman.  I also spoke out  against the retaliation that took place against me, and the retaliation that took place against other employees for speaking out  against  DCLB's illegal practices.  I submitted a written  report, against  the sexual harassment and retaliation and submitted  it to  DC OHR (DC Office of Human Right),  and  DC OIO (DC Office of Integrity and Oversight).  Within less than approximately  (1) month after I  submitted my reports,  Mr. Coleman was fired.  Upon Mr. Coleman being fired, my managers informed me that I would be fired  for speaking our against them.  Within less than six weeks after Mr. Coleman was fired, I was wrongfully, and illegally terminated.  My firing was retaliatory, and is illegal.  It is specifically  a violation  of my civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. & 2000e,  District of Columbia Human Rights Act, DC Code 2-1401- 01,                This court has jurisdiction, and the power to hear the complaint.  I have exhausted my administrative  remedies by taking my case to the DCOHR, (DC Office of Human  Rights), and  EEOC (Equal Employment Opportunity Commission).  DCOHR took no action on my case.  It has been over (6) months since the case has  been with EEOC, and they have taken no action  on the case.  I have requested a Notice or right to Sue from EEOC.  EEOC has informed me that the Notice of Right to Sue letter is pending.  Once I received it, I  will amended this complaint, and attach the  Notice of Right to Sue to this complaint.  ( see attch . B )

In April 2005 I was hired as the third highest level executive in the executive office.  I was hired to assist the DCLB to operate efficiently,  and meet it's sales and transfer goals.  I was hired as the 3rd most senior executive in the executive office.  Jeanette Michael was the Executive Director at a DS-16 level, Jay Young was the Chief Operating Officer at a DS-15 level, and I was brought in as an executive with the title of  Special Assistant at a DS-14  level.  I hold an M.B.A. in Information Technology,  I held several positions in Fortune 500 companies.  I am a graduate of General Edmonds, Information Technology Palace Acquire Program at the Pentagon.  I founded my own IT (Information Technology) firm, and won numerous contracts including fiber optic wiring and cabling contracts for the Fedex Stadium, and Verizon Center.  I brought excellent  experience and business expertise to DCLB, and implemented my business skill, at DCLB.

Shortly after starting work at DCLB I  was approached by Mr. Erich Coleman, the IT Director.  Mr. Coleman began sexually harassing me.

1) He told me he was "looking for a little company", and that his wife had not relocated to this area with him.  I told him I was not interested.

2) Mr.  Coleman fondled my thigh under the dinner table at the University of the District of Columbia Gala.  I told him to never tough me again.  Mr. Coleman  laughed.

3) Mr.  Coleman threatened me at another fundraiser that his wife attended, stating "I better not say anything to her (his wife), or I would regret it. "

4) Mr. Coleman quoted my brassiere size to me, and stated he was talking about my bra size particularly.  I Told him not to speak to me that way.

2

As I continued refusing Mr. Coleman's advances, he became very hostile towards me.

As a new executive I begun meeting other's in the agency and found out that several other women had been sexually harassed by Mr. Coleman, and that these persons had reported the sexual harassment. Some of these women were retaliated against for speaking out. Many women, and men that witnessed the sexual harassment refused to speak out for fear that they would be fired. The women that spoke out are listed below:

1) TONYA SILLS: In February 2005, Mr. Coleman approached Tanya Sills from behind. While standing close against her back he blow on her ear and neck, and ran his hands through her hair. Mr. Coleman did this in the presence of a senior staff member, Mr Ogumbemi, the Chief of Networking Solutions in the IT department.

Mr. Ogumbemi did not report Mr. Coleman's inappropriate behavior, and he did nothing to defend or assist Tonya Sills. Tonya Sills reported this to DCLB's Executive Director , Jeanette Michael. Jeanette Michael refused to take any action against Mr. Coleman. Instead Mr. Ogumbemi and Erich Coleman retaliated against Tanya Sills by placing her on a performance improvement plan, approved by Jeanette Michael.

When I became aware of Tonya Sills issue, I addressed the matter to Jeanette Michael, and Jay Young. Jeanette Michael and Jay Young covered up for Mr. Coleman by stating that Tonya Sills was a liar, and that there were no grounds for her complaint. With the support of Jeanette Michael and Jay Young, Mr. Ogumbemi, and Erich Coleman continued retaliating against Ms. Sills forcing her to resign in the summer of 2005. I understand that Tonya Sills was so affected by Mr. Coleman's sexual harassment and retaliation, that she sought professional counseling.

2) SHARRON POINTER: Mr. Coleman constantly addressed Ms. Pointer and other women inappropriately. He would often call them darling, baby, sweety, etc. Ms. Pointer complained of this to management in 2005. No action was taken against Mr. Coleman. On one occasion, Sharron Pointer put Mr. Coleman on speaker phone while Ms. Michael was in the room, so Ms. Michael could hear the inappropriate language that Mr. Coleman was using towards her. Supposedly Ms. Michael met with Mr. Coleman concerning the matter, however, ultimately nothing was done by Ms. Michael to correct Mr. Coleman's behavior.

)

Ms. Pointer also reported that Mr. Coleman fondled her back, and arm, and pulled her hair in a vendors

meeting.  Ms. Pointer told Mr. Coleman this behavior was inappropriate and unwanted.  Ms. Pointer

transferred to another location out of the DCLB location, so she would not have to be in the presence of

Mr. Coleman.

At DCLB Mr. Coleman continued speaking to women inappropriately, and I witnessed it on numerous

occasions.  In October 2005, I heard Mr. Coleman address Carol Jackson-Jones, as "my darling, here's my

little darling".  These comments were made in front of a room full of senior executives.  I reported Mr.

Coleman's comments to Jeanette Michael.  No corrective action was taken against Mr. Coleman.

3)  ARELLE ANDERSON:  In October 2005 Mr. Coleman pinched and fondled Arrelle Andersons lower

back/buttocks area in front of other staff, and Sr. staff member.  A secretary that witnessed this was Debra

Scott.  Debra Scott telephoned me in the executive office, to report what she had witnessed.  Also

witnessing the incident was Sales Director Billy Parson.  According to Debra Scott no one reprimanded

Mr. Coleman, or reported his inappropriate actions.

Mr. Parson, an executive at DCLB witnessed Mr. Colemans' inappropriate behavior, but he did not report

Mr. Coleman, nor did he do anything to defend Ms. Anderson, against Mr. Coleman's assault.  Debra Scott

told me, that after Mr. Coleman pinched and fondled Arrelle Anderson, he stated "I just can't help myself".

Once again an executive staff member, Mr. Parson, sat silent, and witnessed unlawful behavior, instead of

taking appropriate action against Mr. Coleman. However I was not surprised about this behavior from Mr.

Parson, because Mr. Parson was also involved in questionable behavior.  Mr. Parson was having a sexual

relationship with a secretary, Debra Scott, and he had other sexual relationships with his previous secretaries

at DCLB.  Mr. Parson initially lied to investigators concerning his relationship with Debra Scott.

However he later admitted that he had lied, and that he was having a sexual relationship with Debra Scott.

Mr. Parson participated in covering up Mr. Coleman's' unlawful behavior.  Jeanette Michael and Jay

Young did not reprimand Mr. Coleman, or take any action against Mr. Coleman for his inappropriate

4

behavior, nor did they take any action against Billy Parson for covering up for Mr. Coleman's' inappropriate behavior.

This pattern of behavior of senior male staff of DCLB having sexual relations with staff at DCLB, openly making sexual remarks, openly touching and fondling women at DCLB, without any reprimand from Jeanette Michael and Jay Young set the foundation for men, such as Erich Coleman, to conduct himself inappropriately without any fear of reprimand. It also instilled a hostile work environment at DCLB that was demeaning, and insulting to women.

4) KARLA GRAHAM: Karla Graham told me she had also witnessed inappropriate behavior form Mr. Coleman, and a hostile work environment throughout DCLB. Ms. Graham was a Chief in the Information Technology (IT) dept. under Mr. Coleman. In March 2006, she submitted her resignation. Ms. Graham came to see me before she resigned and told me she was resigning because of the hostile work environment at DCLB. She also told me that she witnessed Mr. Coleman physically putting his hand over women's mouth when they spoke, and fondling, and hugging women in the IT dept,. She stated he was very hostile towards her and the entire staff, and often yelled and shouted at the staff, She stated that she was fearful of working with Mr. Coleman alone, or late in the evening. As a result of this fear she changed her AWS (alternative work schedule) work hours to not have to be at DCLB late in the evening, alone with him. Finally, Mr. Graham told me that Mr. Coleman had made a sexual advances to her on one occasion, but she quickly put this his advances to a stop.

5) In 2006, Carol Jackson-Jones told me that she was the director of Human Resources (HR) at DCLB in 2004 and 2005, before I started working here. She stated that DCLB had several complaints from women at DCLB addressing sexual harassment complaints against Erich Coleman during this time. She told me she took these complaints to Jay Young and Jeanette Michael to have Mr. Coleman dismissed. She told me that Jay Young went on a tirade, yelling at her and slamming his hand on the table. Carol Jackson-Jones told me that Jay Young told her in the presence of Jeanette Michael, that if she pursued firing Mr. Coleman based on these sexual harassment complaints, he would resign and defend Mr. Coleman as his attorney, against DCLB. Jay Young and Jeanette Michael are both attorneys. Carol Jackson-Jones stated that Jeanette Michael did nothing to reprimand Jay Young, or support the dismissal of Mr. Coleman.

Carol Jackson-Jones told me that because of this threat from Jay Young, nothing was ever pursued against Mr. Coleman while she was the director of HR at DCLB.

On numerous occasions I spoke to Jay Young and Jeanette Michael about Mr. Coleman's inappropriate behavior, and sexual harassment towards me and others. I requested that they reprimand, and or fire Mr. Coleman. I had meetings with Jay Young, and Jeanette Michael, and reported Mr. Coleman's inappropriate behavior towards me and others, to no avail. I was told by Jeanette Michael and Jay Young that I was the problem. I was told to stop talking about sexual harassment issues, and the hostile work environment at DCLB, I was told that I needed to go along with their management style, I was told I would be fired if I did not "learn to do things there way."

Since I would not stop complaining, nor would I cover up or ignore the sexual harassment at DCLB, Jeanette Michael and Jay Young retaliated against me by giving me a poor evaluation and putting me on a performance improvement plan. For over 10 months of employment I had (a) never received a performance plan, to be evaluated against, (b) had never received any poor performance reviews from Jay Young or Jeanette Michael.

However, now that I had spoken out against Mr. Coleman, Jay Young and Jeanette Michael falsified (3) different performance evaluations to discredit and find fault with me. I appealed the performance evaluation to Dr. Ghandi.

Dr. Ghandi rescinded the performance evaluation, stating that the performance evaluation was not valid. The performance improvement plan (PIP), was also rescinded. I was also told that these records would be removed from my employment file.

As I continued to complain about Mr. Coleman, I received further retaliation from management at DCLB. Listed below are some of the retaliatory actions endorsed and/or implemented by Jay Young and Jeanette Michael.

1) My car was vandalized (3) times in the parking lot a DCLB. My car was " keyed" according to DCLB *(see attachment C)* security. My car tires were punctured on the sidewalls on (2) separate occasions. I requested to see the surveillance tapes from DCLB security, and DCLB security told me I would be allowed to see them. However Jeanette Michael intervened and told me that she would never allow me to see the surveillance tapes. She also told me I should quit my job, and continued pressuring me to quit. She stated that she was

"going to get rid of me, like she did Phyllis." Phyllis was a previous employee that was removed from DCLB. I reported my car vandalism to the Metropolitan Police Dept.

2) Although I had already been removed from the PIP (performance improvement plan) Jeanette Michael never informed me of this. Instead she sent me off site to training courses. While I was gone, my office files were confiscated. Someone entered my office and removed numerous files, concerning MUSL audits, and notes pertaining to mismanagement at DCLB. I reported this to DCLB security. No action was taken to recover the files.

3) In the spring of 2006 Jay Young and Jeanette Young made an effort to instigate a physical confrontation. Jay Young approached me in a meeting with Jeanette Michael, and taunted a physical confrontation with me. Jay Young, (a very tall and large man) got up from his seat, walked over to where I was seated, leaned over me and placed his face very close to mine, while yelling and screaming at me, and waving his finger in my face. He was so close, that I could feel his saliva landing on my face. Under normal circumstances a person would defend themselves by physically pushing him away, and/or pushing his hand out of their face. But instead of doing either of these things, I pushed my chair back and away from him, stood up, and requested that he stop this behavior towards me, and requested that Jeanette Michael require him to stop doing this. Instead Jeanette Michael sat watching his tirade with approval, and encouraging this behavior.

4) Management re-opened my background investigation to try to find grounds to dismiss me. I was told that nothing derogatory was found in my background investigation.

5) At DCLB's 2006 at a senior strategic planning retreat Jay Young tried to intimidate me. He was writing on a white paper with a black pen, then he stopped, looked over at me, and started writing with a red pen on the white paper. He then stated something similar to, "I'm doing this Kappa" style. As he said this he nodded towards the table where Billy Parson and Erich Coleman were seated, and the three of them made a strange finger signal towards each other in acknowledgement. Jay Young openly did this in front of Jeanette Michael. Myself, and other staff in the meeting were offended by this comment from Jay Young.

After the meeting I wrote an email to Jay Young questioning why he would say this at a DCLB strategic planning meeting. Since this was not a Kappa fraternity meeting. He excused it by stating that he was referencing the colors of the red pen, on the white paper.

In reality, he was confirming what numerous staff had already stated. He was trying to intimidate me and other, and send a message. Supposedly Jay Young, Billy Parson, and several senior level men at DCLB were Kappa Alpha Psi fraternity brothers. As fraternity brothers they protected and covered up for one another.

6) Finally, Jay Young and Jeanette Michael continued there retaliation by assigning me assignment with written guidelines stating that I was not allowed to work with any other departments, or people, within DCLB to complete my work assignments. I was completely ostracized, and all of DCLB staff refused to cooperate, or work with my on an assignment.

During all of this, I continued performing very well, and completing all assignments tasked to me at DCLB. As a result of my performance, DCLB was able to meet their transfer goal and sales goal for the fiscal year that I worked there. They were not able to accomplish this the previous fiscal year, before I was hired. The major change that existed in the DCLB executive staff team that resulted in this turn around was me. I was the only new executive brought on board to improve DCLB operations, and my input resulted in DCLB not only meeting, but exceeding their sales and transfer goals.

In March and April 2006 I was contacted by OIO the (Office of Integrity and Oversight), and OHR (Office of Human Rights), to investigate my complaints about DCLB. I reported Erich Coleman's sexual harassment towards me and other staff at DCLB; and DCLB's hostile work environment. I reported that my job had been threatened, and that Jay Young and Jeanette Michael told me that I would be fired for speaking out about these matters. I reported that Jay Young and Jeanette Michael were aware of Erich Coleman's sexual harassment before I was hired at DCLB, and the ongoing sexual harassment Mr. Coleman conducted towards me and others while I was working there, yet they refused to reprimand him, and continues to allow him to conduct this illegal behavior, and covered up for him. I also reported the retaliation I was suffering for speaking out.

Jeanette Michael tried to continue the PIP plan even after it was rescinded by Dr. Ghandi. She did this by not telling me that the PIP was rescinded, and still requiring that I attend training that she requested under the PIP plan. She did this although she was already informed by Dr. Ghandi that the PIP was rescinded. I went to the training classes as required. I was in training for appx. 3 weeks during the majority of the month of May 2006. I later found out that during May 2006, OIO and OHR was conducting an investigation of Mr. Coleman based on the information I told them concerning Mr. Coleman sexually harassing me, and others at DCLB.

According to OHR, Congressman Wynn's office requested that an investigation be conducted concerning the pervasive sexual harassment and hostile work environment at DCLB.

In late May 2006 Mr. Coleman was fired from DCLB. I was informed that my complaints were validated by the investigations, and Mr. Coleman was found guilty of inflicting these egregious sexual attacks against me and other women at DCLB, and fired because of this inappropriate behavior.

I returned to the office in early June 2006. When I returned to the office I was informed that Mr. Coleman was fired. I was specifically told that Mr. Coleman was fired based of me speaking out about Mr. Coleman's' inappropriate behavior. Jay Young and Jeanette Michael stated to me I was going to be fired for "breaking ranks" with the executive team, and speaking out against them, Erich Coleman, Billy Parson, and other executives at the lottery. Within approximately six weeks after Mr. Coleman was terminated, I was wrongfully terminated.

Having suffered through the sexual harassment, and retaliation I became ill and suffered emotional distress and physical illness. I obtained medical attention due to the excessive stress this situation imposed upon me.

On July 11, 2006 an employment termination letter was written. I received the letter from Jeanette Michael and Morris Winn on July 18, 2006. This termination was illegal. I was terminated in retaliation for speaking out against sexual harassment at DCLB.

Since I was fired, DC government has continued retaliation against me by making derogatory remarks to potential new employers that have contacted them concerning my previous employment at DCLB. This retaliation from DC government has hampering me from obtaining new employment. DC government has also retaliated against my company, Delle Data Systems, Inc. They have done this by refusing to grant it an LSDBE (Local Small Disadvantaged Business Entity) certification to conduct business in Washington, DC, although the company qualified for the certification through the waiver program. This retaliation from DC government has hampering my business from obtaining new contracts with DC government. This on going retaliation from DC government has caused me economic loss, physical and emotional damage, and damage to my professional reputation.

I pray for relief:

- I am requesting relief from the court as outlined below:

1) A lump-sum payment of $350,000.00

2) Mutually agreeable letter of recommendation; my employment record cleared of any wrongdoing; and the wrongful termination removed from my employment record.

3) Payment of my COBRA payments until I obtain new employment covering my benefits or for 18 months, whichever comes sooner.

4) Payment of $5000 for my professional development, continuing education, and or career or executive placement services.

5) The attorney's fees and costs that Ms. Cooper has expended in pursuing this matter.

6) Other compensatory and punitive damages relief as just and appropriate

- I am asking for a trial by jury

Best Regards,

*Toby Cooper*

Toby Cooper

43333 Crystal Lake St

Leesburg, VA 20176





### DISTRICT OF COLUMBIA
### DEPARTMENT OF EMPLOYMENT SERVICES
### CENTRAL ADJUDICATION BRANCH
### P O BOX 23794
### WASHINGTON, D.C.  20026

## DETERMINATION BY CLAIMS EXAMINER

**Social Security Number:** 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

**CLAIMANT:**

TOBYCOOPER
43333 CRYSTAL LAKE ST
LESBURG, VA - 20176-0000

**EMPLOYER:**

DC GOVERNMENT PERSONNEL
441 4TH ST NW #340-S
WASHINGTON, DC - 20001

**ISSUE:**
**DISCHARGED FOR MISCONDUCT**

**REASON FOR DETERMINATION:**
Claimant was discharged from her most recent work, however, employer did not provide any information about the separation despite requests.  Employer has not established misconduct per Title 51.110(b).

☒ **Misconduct has not been established per Title 51.110(b).**

**DECISION:**
**Therefore, the claimant listed herein has been determined eligible for unemployment benefits.  No disqualification has been imposed based on separation from your employment in accordance with D.C. Code. Title 51-110(b).**

*Michael H. Ellison*
Claims Examiner

07 1229

I certify that a copy of this document was mailed to the employer/claimant at the above address on 8/8/2006. *Michael H. Ellison*
Signature

**FILED**

JUL - 9 2007

**SEE THE ENCLOSED NOTICE OF APPEAL RIGHTS**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Regarding
Attachment A.

DC government, DCLB, &
OCFO placed in my employment
file that I was fired for
misconduct. These agencies have
forwarded this incorrect, defaming &
disparaging information to employers
that I have applied to jobs for.
This derogatory information has
kept me from obtaining new
employment.
    This information is incorrect,
defamed my character and it has
prevented me from obtaining new
employment.        Thank you,

Deby
Cooper

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## Washington Field Office

1801 L Street, N.W., Suite 100
Washington, D.C. 20507
(202) 419-0700
TTY (202) 419-0702
FAX (202) 419-0740

*Attachment B*

January 16, 2007

Toby Cooper
43333 Crystal Lake St.
Leesburg, VA 20176

Dear Ms. Cooper:

This is in response to your letter dated December 12, 2006, concerning your complaint against DCLB. The Equal Employment Opportunity Commission - Office of Field Management Programs has asked this office to respond directly to you.

Please be advised that your correspondence has been assigned to an Intake Officer for processing. You will be contacted by the Intake Officer either by telephone or mail if necessary. Your patience is appreciated.

Sincerely,

Tram Ngo

Tram Ngo
Acting CRTIU Supervisor

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

attn: Janet Stump
EEOC
1801 L St. N.W.
Wash. D.C. 20507

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X Jean Stevens
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Jean Stevens    3 2 2007

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7006 0100 0004 6909 7650

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

07 1229

**FILED**

JUL - 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Re. Attachment C

Police Report & DCLB
Security Dept. Reports
of Vandalism to my vehicle @

Thank
you

Sissy
Cooper

# Metropolitan Police Department

## Incident-Based Event Report

Washington, D.C.

**PART I - CLASSIFICATION OF EVENT**

| 1 TYPE OF REPORT | 2 DATE AND TIME OF EVENT | | | | 5 DATE OF REPORT | 6 TIME OF REPORT | 7 DISTRICT | 8 SECTOR | BEAT | COMPLAINT NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|

- ○ Offense
- ● Incident

**FILL IN THE OVALS COMPLETELY**

Right Mark ●
Wrong Marks ⊘ ⊗ ⊙

Start Date: Jan 9 0 6 (●Jan)
Start Time: 20:00
End Date: Feb 2 3 0 6
End Time: 09:00
Date of Report: 1 6 0 6
Time of Report: 14:50
District: 7 0 1
Beat: 0 2 1 2 6 7

| 9 EVENT LOCATION ADDRESS | | 10 REPORT RECEIVED BY | 11 IS RADIO RUN LOCATION AND EVENT LOCATION THE SAME? | 12 PROPERTY TYPE |
|---|---|---|---|---|

**2101 MLK Ave. S.E.**

- ○ Rear of
- ○ In front of
- ○ Along side of
- ○ Inside of
- ○ NW Corner
- ○ NE Corner
- ○ SW Corner
- ○ SE Corner

- ○ TRU
- ● Walk-in
- ○ On-scene
- ○ Radio run

- ○ Yes  ○ No

- ● Public
- ○ Private

| 13 EVENT NO. 1 | 14 EVENT NO. 2 | 15 EVENT NO. 3 |
|---|---|---|

**Damage to Property**

| 16 FORCED ENTRY | 17 POINT OF ENTRY | 18 a. Method Used | b. Tools Used | 19 WEATHER CONDITIONS |
|---|---|---|---|---|

- ○ Yes
- ○ No

Weather: ○ Clear  ○ Rain  ○ Other  ● Unknown  ○ Cloudy  ○ Snow  ○ Not applicable

| 20 SUSPECTED HATE CRIME? | 21 SECURITY SYSTEM (Mark all that apply) |
|---|---|

- ● None
- ○ Ethnic
- ○ Sexual Orientation
- ○ Racial
- ○ Religious
- ○ Other

- ○ Alarm/Audio
- ○ Alarm/Silent
- ○ Camera
- ○ Dog
- ○ Dead bolt
- ○ Unlocked
- ○ Exterior lights
- ○ Interior lights
- ○ Fence
- ○ Guard
- ○ Neighborhood watch
- ○ Other
- ● Not applicable
- ○ Unknown

| 22 LOCATION TYPE (Mark only one) | 23 DESIGNATED AREAS (Mark all that apply) |
|---|---|

- ○ Air/Bus/Train terminal
- ○ Alley
- ○ Bank/Savings & loan
- ○ Bus stop
- ○ Church/Synagogue/Temple
- ○ College/University
- ○ Commercial office building
- ○ Construction site
- ○ Convenience store
- ○ Department/Discount store
- ○ D.C. government building
- ○ Doctor's office/Hospital
- ○ Drug store
- ○ Federal/Government bldg.
- ○ Field/Woods
- ○ Grocery/Supermarket
- ○ Hotel/Motel/Etc.
- ○ Jail/Prison
- ○ Lake/Waterway
- ○ Liquor store
- ○ Park area
- ○ Parking lot/Parking garage
- ○ Public housing project
- ○ Public/Private school
- ○ Rental storage facility
- ○ Residence/Home
- ○ Restaurant
- ○ Service station
- ○ Sidewalk
- ○ Specialty store
- ● Street/Highway/Road
- ○ Tavern/Night club
- ○ Other
- ○ Not applicable
- ○ Unknown

- ○ Victim's vehicle
- ○ Suspect's vehicle
- ○ Taxi-cab
- ○ Bus
- ○ Train/Metro/Amtrak Etc.
- ○ Hallway
- ○ Elevator
- ○ Stairwell
- ○ Basement/Laundry room
- ○ Apartment/Condo unit
- ○ Single family dwelling
- ○ Hotel/Motel room
- ○ College/University dorm
- ○ Classroom
- ○ Office room
- ○ Vacant building/room
- ○ Customer area
- ○ Storage area
- ○ In public housing
- ○ W/in 1 block of public housing
- ○ W/in 1,000 ft. of school
- ○ Other
- ○ Not applicable
- ○ Unknown

**PART II - VICTIM INFORMATION**

| 24 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1 | 25 RELATED TO EVENT NO(S). | 38 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1 | 39 RELATED TO EVENT NO(S). |
|---|---|---|---|

**Cooper, Toby**

| 26 VICTIM TYPE | 40 VICTIM TYPE |
|---|---|

- ● Individual
- ○ Business
- ○ Financial inst.
- ○ Government
- ○ Religious org.
- ○ Society/Public
- ○ Police officer
- ○ Other

| 27 DATE OF BIRTH | 28 AGE RANGE | 29 SEX | 30 HOME PHONE | 41 DATE OF BIRTH | 42 AGE RANGE | 43 SEX | 44 HOME PHONE |
|---|---|---|---|---|---|---|---|

- ○ Unknown  ○ NA

DOB: Mar 1 4 6 4

Age Range:
- ○ 0-1 yrs.
- ○ 2-12 yrs.
- ○ 13-17 yrs.
- ● 18-65 yrs.
- ○ Over 65

Sex:
- ● Male
- ○ Female
- ○ Unknown

Home Phone: **(703) 443-9045**

31 BUSINESS PHONE: **(202) 645-7945**

| 32 RACE/ETHNICITY (Mark all that apply) | 45 RACE/ETHNICITY (Mark all that apply) |
|---|---|

- ○ American Indian/Alaskan Native
- ○ Asian/Pacific Islander
- ● Black
- ○ Chinese
- ○ Latino/Hispanic
- ○ Jamaican
- ○ Japanese
- ○ Korean
- ○ Vietnamese
- ○ White
- ○ Other
- ○ Unknown/Refused

| 33 HOME ADDRESS | 47 HOME ADDRESS |
|---|---|

○ DC Resident  ● Non-DC Resident  ○ Unknown

**43333 Crystal Lake St.**
**Leesburg, VA 20176**

| 34 BUSINESS ADDRESS/SCHOOL | 48 BUSINESS ADDRESS/SCHOOL |
|---|---|

**2101 MLK Ave. S.E.**
**Washington, DC 20020-5731**

| 35 OCCUPATION | 36 IS EVENT RELATED TO OCCUPATION? | 49 OCCUPATION | 50 IS EVENT RELATED TO OCCUPATION? |
|---|---|---|---|

**Executive**

○ Yes  ● No  ○ Unknown

| 37 ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1 | 51 ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1 |
|---|---|

**N/A**

| 52 STATUS (Mark one) | 53 REVIEWER | 54 DISTRIBUTION |
|---|---|---|

- ○ Open
- ○ Unfounded
- ○ Closed
- ○ Suspended
- ○ Closed by arrest, attach PD-252

D-251  4/99

Printed in U.S.A.

PAGE 1

07 1229

**FILED**

JUL - 9 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| 55 | IS VICTIM #1 THE REPORTING PERSON? IF NO, ENTER THE NAME, ADDRESS AND PHONE NUMBER OF THE REPORTING PERSON. | Name: _____ | | Phone-Area Code: _____ |
|---|---|---|---|---|
| | ○ Yes  ○ No | Address: _____ | | |

| 56 | DID THE REPORTED EVENT OCCUR AS A RESULT OF AN INTRA-FAMILY MATTER? ○ Yes ● No | 56A | WAS PD FORM 378A ISSUED? ○ Yes ○ No | 57 | IS CPO/TPO OUTSTANDING? ○ Yes ○ No ○ Unknown | IF YES, ENTER CPO/TPO #: |
|---|---|---|---|---|---|---|

**58 — INJURIES** Use the following codes to describe injuries. (Mark all that apply)

N = None Visible
M = Apparent Minor Injury
B = Apparent Broken Bones

O = Other Major Injury
I = Possible Internal Injury
G = Gunshot

L = Severe Laceration
T = Loss of Teeth
U = Unconscious

| INJURED | NUMBER | INJURY CODE | DESCRIBE INJURY | WHERE TAKEN | BY WHOM | DCFD AMB. | DCFD AMB. # | STATUS |
|---|---|---|---|---|---|---|---|---|
| ○ Victim | ①②③④⑤ | ⓃⓄⓁ Ⓜ | | | | ○ Yes | | ○ Admitted |
| ○ Suspect | ⑥⑦⑧⑨⓪ | ⒾⒷⓉⓊ | | | | ○ No | | ○ Released |
| ○ Victim | ①②③④⑤ | ⓃⓄⓁ Ⓜ | | | | ○ Yes | | ○ Admitted |
| ○ Suspect | ⑥⑦⑧⑨⓪ | ⒾⒷⒼⓉⓊ | | | | ○ No | | ○ Released |
| ○ Victim | ①②③④⑤ | ⓃⓄⓁ Ⓜ | | | | ○ Yes | | ○ Admitted |
| ○ Suspect | ⑥⑦⑧⑨⓪ | ⒾⒷⒼⓉⓊ | | | | ○ No | | ○ Released |
| ○ Victim | ①②③④⑤ | ⓃⓄⓁ Ⓜ | | | | ○ Yes | | ○ Admitted |
| ○ Suspect | ⑥⑦⑧⑨⓪ | ⒾⒷⒼⓉⓊ | | | | ○ No | | ○ Released |

## PART III - PROPERTY

**59 Codes**
S = Stolen
E = Evidence
R = Recovered
F = Found

I = Impounded
V = Vehicle from which theft occurred
D = Alleged drug type

L = Lost
P = Suspected proceeds of crime
O = Other

a. Property Book & Page No.
b. Location of Property Book

| Code | Description of Item(s) | Serial Number/ Operation ID No. | Model No. | Color | Size | Quantity | Comp. Value | Age | MPDC Value |
|---|---|---|---|---|---|---|---|---|---|
| O | Drivers Side Rear door scratched | | | | | 1 | 1000 | | 500.00 |

TOTAL VALUE ► 500.00

| 60 VEHICLE INFORMATION | Vehicle operated/used by: ○ Victim  ○ Suspect  ○ Victim's vehicle taken by suspect |
|---|---|

| Code | Year | Make | Model | Color | Body | Tag No./State/Year | VIN |
|---|---|---|---|---|---|---|---|
| O | 2000 | Toyota | Echo | Gray | 4D | VA/JHE5813 | JTDBT1239Y0078219 |

## PART IV - SUSPECT/MISSING PERSON INFORMATION (Use narrative if additional space is needed.)

**61 #1**

| a. Race | | b. Sex | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|
| ○ Suspect ○ Missing | ○ Asian ○ White ○ Black ○ Latino/Hispanic | ○ Unknown ○ Other | ○ Male ○ Unknown ○ Female | | | | | |

| h. Complexion | i. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |
|---|---|---|---|---|---|---|---|---|

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | Other | | Color | Make | Model | Caliber |
|---|---|---|---|---|---|---|---|
| ○ Handgun ○ Revolver ○ Rifle | ○ Shotgun ○ Semi-automatic ○ Automatic | ○ Other firearm | ○ Cutting instrument ○ Blunt object ○ Motor vehicle | ○ Hands/Feet/Teeth ○ None ○ Unknown | ○ Other (specify) | | | |

**62 #2**

| a. Race | | b. Sex | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|
| ○ Suspect ○ Missing | ○ Asian ○ White ○ Black ○ Latino/Hispanic | ○ Unknown ○ Other | ○ Male ○ Unknown ○ Female | | | | | |

| h. Complexion | i. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |
|---|---|---|---|---|---|---|---|---|

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | Other | | Color | Make | Model | Caliber |
|---|---|---|---|---|---|---|---|
| ○ Handgun ○ Revolver ○ Rifle | ○ Shotgun ○ Semi-automatic ○ Automatic | ○ Other firearm | ○ Cutting instrument ○ Blunt object ○ Motor vehicle | ○ Hands/Feet/Teeth ○ None ○ Unknown | ○ Other (specify) | | | |

**63 #3**

| a. Race | | b. Sex | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|
| ○ Suspect ○ Missing | ○ Asian ○ White ○ Black ○ Latino/Hispanic | ○ Unknown ○ Other | ○ Male ○ Unknown ○ Female | | | | | |

| h. Complexion | i. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |
|---|---|---|---|---|---|---|---|---|

q. Weapons Used in Offense (Mark all that apply)

| Firearm | | Other | | Color | Make | Model | Caliber |
|---|---|---|---|---|---|---|---|
| ○ Handgun ○ Revolver | ○ Shotgun ○ Semi-automatic | ○ Other firearm | ○ Cutting instrument ○ Blunt object | ○ Hands/Feet/Teeth ○ None | ○ Other (specify) | | | |

**PART V - MISSING PERSONS**

| 64 PROBABLE CAUSE OF ABSENCE AND DESTINATION | 65 COMPLAINT NUMBER |
|---|---|

**65 COMPLAINT NUMBER**
0 2 1 2 6 7

| 66 IF MISSING PERSON HAS RUN AWAY BEFORE, GIVE DATE AND WHERE LOCATED: | 67 CLASSIFICATION | 68 CLASSIFIED BY: |
|---|---|---|
| | ○ Critical  ○ Non-critical | |

| 69 PHYSICAL/MENTAL CONDITION (i.e., diabetic) | 70 DESCRIBE ARTICLES OF JEWELRY WORN AND IDENTIFICATION CARRIED | 71 NAME OF PARENT/GUARDIAN |
|---|---|---|

| 72 ADDRESS OF PARENT/GUARDIAN | 73 IF JUVENILE, ENTER MOTHER'S MAIDEN NAME | 74 MISSING PERSON SECTION NOTIFIED (Name) |
|---|---|---|

**75 NARRATIVE** Describe event and action taken. If additional narrative space is needed, use PD Form 251-A.

Item Number Continued

C1 Reports that during the listed dates and during the listed times, the listed vehicle was damaged in an unknown manner.

C-1s vehicle sustained damage to the passenger side rear door (scratched).

| 76 EVIDENCE TECHNICIAN/CSES # | 77 NAME OF INVESTIGATOR NOTIFIED | 78 TELETYPE NOTIFIED (Name) | NOTIFICATION ALSO REQUIRED WHENEVER MISSING PERSON LOCATED | 79 TELETYPE # |
|---|---|---|---|---|

| 80 REPORTING OFFICER'S SIGNATURE | ELEMENT | 81 OTHER POLICE AGENCY (Indicate if report prepared by officer other than MPD) | SECOND OFFICER'S NAME | ELEMENT | 83 SIGNATURE OF SUPERVISOR | ELEMENT |
|---|---|---|---|---|---|---|
| Susan M. Shaw | CIV | ○ USCP  ○ USSS  ○ METRO TRANSIT  ○ OTHER | | | Scott Kimbrel | 2D |

BADGE NUMBER · BADGE NUMBER · BADGE NUMBER

**PART VI - ADDITIONAL INFORMATION** (Use PL...m 251-C for additional victims or suspects.)

| 84 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1 | 85 RELATED TO EVENT NO(S). ① ② ③ ④ ⑤ ⑥ ⑦ ⑧ ⑨ ⑩ |
|---|---|

| 86 | VICTIM TYPE |
|---|---|

- ○ Individual
- ○ Business
- ○ Financial inst.
- ○ Government
- ○ Religious org.
- ○ Society/Public
- ○ Police officer
- ○ Other

| 87 DATE OF BIRTH | 88 AGE RANGE | 89 SEX | 90 HOME PHONE |
|---|---|---|---|
| ○ Unknown ○ NA | | | ( ) |

| Month | Day | Year |
|---|---|---|
| Jan | | |
| Feb | | |
| Mar | ⓪ ⓪ ⓪ | |
| Apr | ① ① ① |
| May | ② ② ② |
| Jun | 3 ③ ③ |
| Jul | ④ ④ ④ |
| Aug | ⑤ ⑤ ⑤ |
| Sep | ⑥ ⑥ ⑥ |
| Oct | ⑦ ⑦ ⑦ |
| Nov | ⑧ ⑧ ⑧ |
| Dec | ⑨ ⑨ ⑨ |

- AGE RANGE: ○ 0-1 yr. ○ 2-12 yrs. ○ 13-17 yrs. ○ 18-65 yrs. ○ Over 65
- SEX: ○ Male ○ Female ○ Un-known

91 BUSINESS PHONE

92 RACE/ETHNICITY (Mark all that apply)
- ○ American Indian/Alaskan Native
- ○ Asian/Pacific Islander
- ○ Black
- ○ Chinese
- ○ Latino/Hispanic
- ○ Jamaican
- ○ Japanese
- ○ Korean
- ○ Vietnamese
- ○ White
- ○ Other
- ○ Unknown/Refused

| 93 HOME ADDRESS | ○ DC Resident ○ Non-DC Resident ○ Unknown |
|---|---|

| 94 BUSINESS ADDRESS/SCHOOL |
|---|

| 95 OCCUPATION | 96 IS EVENT RELATED TO OCCUPATION? ○ Yes ○ No ○ Unknown |
|---|---|

97 ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1

| 98 NAME OF COMPLAINANT/VICTIM/MISSING PERSON NO. 1 | 99 RELATED TO EVENT NO(S). ① ② ③ ④ ⑤ ⑥ ⑦ ⑧ ⑨ ⑩ |
|---|---|

| 100 | VICTIM TYPE |
|---|---|

- ○ Individual
- ○ Business
- ○ Financial inst.
- ○ Government
- ○ Religious org.
- ○ Society/Public
- ○ Police officer
- ○ Other

| 101 DATE OF BIRTH | 102 AGE RANGE | 103 SEX | 104 HOME PHONE |
|---|---|---|---|
| ○ Unknown ○ NA | | | ( ) |

| Month | Day | Year |
|---|---|---|
| Jan | | |
| Feb | | |
| Mar | ① ① ① | |
| Apr | ① ① ① |
| May | ② ② ② |
| Jun | ③ ③ ③ |
| Jul | ④ ④ ④ |
| Aug | ⑤ ⑤ ⑤ |
| Sep | ⑥ ⑥ ⑥ |
| Oct | ⑦ ⑦ ⑦ |
| Nov | ⑧ ⑧ ⑧ |
| Dec | ⑨ ⑨ ⑨ |

- AGE RANGE: ○ 0-1 yr. ○ 2-12 yrs. ○ 13-17 yrs. ○ 18-65 yrs. ○ Over 65
- SEX: ○ Male ○ Female ○ Un-known

105 BUSINESS PHONE

106 RACE/ETHNICITY (Mark all that apply)
- ○ American Indian/Alaskan Native
- ○ Asian/Pacific Islander
- ○ Black
- ○ Chinese
- ○ Latino/Hispanic
- ○ Jamaican
- ○ Japanese
- ○ Korean
- ○ Vietnamese
- ○ White
- ○ Other
- ○ Unknown/Refused

| 107 HOME ADDRESS | ○ DC Resident ○ Non-DC Resident ○ Unknown |
|---|---|

| 108 BUSINESS ADDRESS/SCHOOL |
|---|

| 109 OCCUPATION | 110 IS EVENT RELATED TO OCCUPATION? ○ Yes ○ No ○ Unknown |
|---|---|

111 ADDITIONAL MEANS TO CONTACT COMPLAINANT/VICTIM NO. 1

---

**112**

| #1 ○ Suspect ○ Missing | a. Race ○ Asian ○ Black | ○ White ○ Latino/Hispanic | ○ Unknown ○ Other | b. Sex ○ Male ○ Female | ○ Unknown | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|---|---|---|

| h. Complexion | I. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |
|---|---|---|---|---|---|---|---|---|

q. Weapons Used in Offense (Mark all that apply)

| Firearm ○ Handgun ○ Shotgun ○ Other ○ Revolver ○ Semi-automatic firearm ○ Rifle ○ Automatic | Other ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown | Color | Make | Model | Caliber |
|---|---|---|---|---|---|

**113**

| #2 ○ Suspect ○ Missing | a. Race ○ Asian ○ Black | ○ White ○ Latino/Hispanic | ○ Unknown ○ Other | b. Sex ○ Male ○ Female | ○ Unknown | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|---|---|---|

| h. Complexion | I. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |
|---|---|---|---|---|---|---|---|---|

q. Weapons Used in Offense (Mark all that apply)

| Firearm ○ Handgun ○ Shotgun ○ Other ○ Revolver ○ Semi-automatic firearm ○ Rifle ○ Automatic | Other ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown | Color | Make | Model | Caliber |
|---|---|---|---|---|---|

**114**

| #3 ○ Suspect ○ Missing | a. Race ○ Asian ○ Black | ○ White ○ Latino/Hispanic | ○ Unknown ○ Other | b. Sex ○ Male ○ Female | ○ Unknown | c. Exact Age or Range | d. Height | e. Weight | f. Eyes | g. Hair |
|---|---|---|---|---|---|---|---|---|---|---|

| h. Complexion | I. Scars | j. Mustache | k. Facial Hair | l. Hat | m. Coat/Jacket | n. Pants | o. Blouse/Shirt | p. Perpetrator Suspected of Using ○ Alcohol ○ Drugs ○ Computer ○ N/A |
|---|---|---|---|---|---|---|---|---|

q. Weapons Used in Offense (Mark all that apply)

| Firearm ○ Handgun ○ Shotgun ○ Other ○ Revolver ○ Semi-automatic firearm ○ Rifle ○ Automatic | Other ○ Cutting instrument ○ Hands/Feet/Teeth ○ Other (specify) ○ Blunt object ○ None ○ Motor vehicle ○ Unknown | Color | Make | Model | Caliber |
|---|---|---|---|---|---|

CCN    021-267    PAGE 4

P.D. 252  Rev. 10/86

# METROPOLITAN POLICE DEPARTMENT
## SUPPLEMENT REPORT
Washington, D.C.

| | | | | |
|---|---|---|---|---|
| ☐ CLASSIFICATION CHANGE | 1. DISTRICT<br>Seventh District | 2. BEAT<br>701 | 3. RA | 4. ORIGINAL CLASSIFICATION<br>Damage To Property |
| ☒ ADDITIONAL INFORMATION | 6. DATE OF THIS REPORT<br>03/21/06 | 7. REPORTING ELEMENT<br>Seventh District | 8. CLASSIFICATION OF REPORT CHANGED TO: | 5. COMPLAINT NUMBER<br>021-267 |

| 9. DATE AND TIME OF EVENT<br>1/9/06 2000-1/23/06 0900 | 10. DATE AND TIME OF ORIG. RPT.<br>2/16/06 1450 | 11. EVENT LOCATION<br>2101 MLK Jr. Ave Se | 12. PROPERTY TYPE<br>☐ PUBLIC  ☒ PRIVATE |
|---|---|---|---|

| 13. RADIO RUN RECEIVED<br>☐ YES  ☒ NO        TIME RECEIVED | 14. DESCRIBE LOCATION<br>Parking Lot | 15. WHERE ENTERED<br>N/A | 16. TOOLS / WEAPONS<br>N/A | 17. METHODS<br>N/A |
|---|---|---|---|---|

| 18:<br>A | COMPLAINANT/MISSING PERSON/FIRM<br>Cooper, Toby | SEX<br>F | RACE | DATE OF BIRTH<br>Adult | B | COMPLAINANT/MISSING PERSON/FIRM | SEX | RACE | DATE OF BIRTH |
|---|---|---|---|---|---|---|---|---|---|

## 19. SUSPECT / MISSING PERSON INFORMATION

| | RACE | SEX | AGE | HGT | WGT | EYES | HAIR | COMPLEXION | SCARS | HAT | COAT | JACKET | PANTS | SHIRT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ SUSPECT<br>☐ MISSING PERSON | | | | | | | | | | | | | | |
| ☐ SUSPECT<br>☐ MISSING PERSON | | | | | | | | | | | | | | |

### 20. SOLVABILITY FACTORS
Complete each item below. If additional space is needed, use the narrative section. If necessary, use PD Form 251-A.
Refer to the specific item numbers when continuing information in the narrative section or on PD Form 251-A.

| | | | |
|---|---|---|---|
| A | IS THERE A WITNESS? | ☐ YES ☐ NO | If yes, enter name(s), address(es), phone number(s), hours of availability and brief account. |
| B | IS A SUSPECT NAMED? | ☐ YES ☐ NO | Enter the name and include any nickname used. |
| C | IS THE STOLEN PROPERTY TRACEABLE? | ☐ YES ☐ NO | Include reason why or why not. |
| D | IS PHYSICAL EVIDENCE PRESENT? | ☐ YES ☐ NO | Describe it. |
| E | IS THE PERPETRATOR KNOWN TO THE VICTIM? | ☐ YES ☐ NO | If yes, describe the relationship. |
| F | WAS A REFERRAL FORM GIVEN TO COMPLAINANT? | ☐ YES ☐ NO | G | Give any address, place of employment, or hangout known for the perpetrator(s) |
| H | DURING WHAT HOURS IS COMPLAINANT AVAILABLE FOR INTERVIEW | | I | List the name, address, phone number and any information provided when the area was canvassed. |
| J | TO BE COMPLETED BY CRIME ANALYSIS | IS AN MO OR PATTERN INDICATED? ☐ YES ☐ NO | DESCRIBE MO OR PATTERN |

### 21. ADDITIONAL STOLEN PROPERTY

PROPERTY BOOK

| CODE | ITEM | SERIAL NO. / OPERATION ID NO. | MODEL NO. | COMP. VALUE | AGE | MPDC VALUE |
|---|---|---|---|---|---|---|
| | | | | | | |

BOOK / PAGE NO.
ADDITIONAL VALUE
ORIGINAL VALUE

| ⓒ | YEAR<br>2000 | MAKE<br>Toyota | MODEL<br>Echo | COLOR<br>Gray | BODY<br>4-Door | TAG / STATE / YEAR<br>JHE5813/VA/06 | VEHICLE IDENTIFICATION NO.<br>JTDBT1239Y0078219 | * * | TOTAL PROP. VALUE |
|---|---|---|---|---|---|---|---|---|---|

### 22. NARRATIVE:
Record your activity and all developments in the case subsequent to your last report. List the name, addresses, sex, race, age, and arrest numbers of all arrested persons. Explain any change in classification. List the name, addresses, and telephone numbers of all witnesses and suspects.

C-1 reports that the original report did not accurately reflect the extent of the damage as she reported it. She reports that the damage to her above listed auto consisted of a lengthy, linear scratch that runs the length of the driver's door and left passenger door.

| 23. STATUS<br>☐ OPEN  ☐ PRIOR CLOSED  ☐ CLOSED | ☐ UNFOUNDED (Explain in No. 22)<br>☐ SUSPENDED (Explain in No. 22) | 24. TELETYPE NO. | 25. SOLVABILITY RATING | 26. SOLVABILITY CLASSIFICATION |
|---|---|---|---|---|
| 27. INVESTIGATIVE OFFICER'S RECOMMENDATION<br>☐ SUSPEND  ☐ INVESTIGATIVE FURTHER | | 28. SUPERVISOR'S RECOMMENDATION<br>☐ SUSPEND  ☐ INVESTIGATIVE FURTHER | | |
| 29. REPORTING MEMBER'S SIGNATURE<br>Sgt. Michael Barron    S0134    7D | 30. INVESTIGATOR'S SIGNATURE | BADGE / ELEM. | 31. SUPERVISOR'S SIGNATURE<br>Lt. Alan E. Hill L203/7D | BADGE / ELEM. |
| 32. INVESTIGATIVE REVIEW OFFICER | 33. SUPERVISOR | BADGE / ELEM. | 34. REVIEWER | 35. DISTRIBUTION |

* * *  Value of vehicles will be entered by the Information Processing Section, Data Processing Division

Automated by Egcray, TD, 12/99

*Stolen Binders*

# DC LOTTERY & CHARITABLE GAMES
## SECURITY DEPARTMENT

## INCIDENT REPORT

| 2. Victim or Subject | Division or Office | 1. Incident Number |
|---|---|---|
| Tony Cooper | Exec. Office | Telephone Number (202) 645-7945 |

**3. Residence of Victim or Subject:** Tony Cooper

**4. Type of Incident:** (2) Binders have been removed from my office  1) 1st Binder - MUSL  (2) 2nd Binder IT 50+

**5. Location of Occurrence:** My Office

| 6. Time of Occurrence (on or between) | Hour | Day of Week | Month | Day | Year |
|---|---|---|---|---|---|
| | | | | | |

| 7. Time Reported | Hour | Day of Week | Month | Day | Year |
|---|---|---|---|---|---|
| 11:00 Am | 11:00 | Friday | 2 | 3 | 06 |

**8. Reported By:** Tony Cooper  **Division or Office:** DCLB  **Telephone Number:** 202 645-7945

**9. Details:** (2) Binders that I work with have been removed from my office without my knowledge or consent. The binders are 1) The IT Dept. soft Binder, The second Binder is the IT Dept. MUSL Binder

**Witness:**

**Emergency Response:**

**Worker's Compensation Contact/ Curtis Properties Representative:**

Tony Cooper

**10. Signature of individual reporting the Incident:**

C:\My Documents\secdept incident report.doc

Revised 6/19/00

# INCIDENT REPORT
## Instructional Notes

| Item Number(s) | Instructions |
|---|---|
| 1. | This block is to be completed by the Security Department. |
| 2-8 | Please respond to all applicable sections in these blocks which are self explanatory. |
| 9. | Please state briefly what occurred.  If additional space is needed, use the attached 8 ½ x 11 white paper. |
| 10. | Signature of individual reporting the incident. |

After completing the form, return it to the Security Department, 2nd floor or call 645-8080/81.

Revised 6/10/00



# DC LOTTERY & CHARITABLE GAMES
## SECURITY DEPARTMENT

### INCIDENT REPORT

| | | 1. Incident Number |
|---|---|---|
| **2. Victim or Subject** Toby Cooper | **Division or Office** Exec. Office | **Telephone Number** (202) 645-7945 |
| **3. Residence of Victim or Subject** Toby Cooper | | |
| **4. Type of Incident** My Car was scratched on left Driver side door | | |
| **5. Location of Occurrence** D.C.L.B. Parking lot | | |

| 6. Time of Occurrence (on or between) | | Hour | Day of Week | Month | Day | Year |
|---|---|---|---|---|---|---|
| | | | | | | |

| 7. Time Reported 11:40 AM | | Hour 11:40 | Day of Week Thursday | Month 2 | Day 9 | Year 06 |
|---|---|---|---|---|---|---|

| 8. Reported By Toby Cooper | Division or Office DCLB | Telephone Number 202 645 7945 |
|---|---|---|

**9. Details**

_____

_____

_____

_____

**Witness:**

**Emergency Response:**

**Worker's Compensation Contact/ Curtis Properties Representative:**

**10. Signature of Individual reporting the incident:** Toby Cooper    2/9/06





1-24-06

1-24-06



1-24-06







## I (a) PLAINTIFFS

TOBY COOPER

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES) Loudoun county

## DEFENDANTS

District of Columbia Lottery and Charitable Games Control Board et. all

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

TOBY COOPER
43333 Crystal Lake St.   Phone 703
Leesburg, VA 20176       443-9045

A1

Case: 1:07-cv-01229
Assigned To : Sullivan, Emmet G.
Assign. Date : 7/9/2007
Description: Employ. Discrim.

## II. BASIS OF JURISDICTION

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust

☐ 410 Antitrust

### ☐ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. General Civil (Other)   OR   ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

(3)

| ☐ **G. Habeas Corpus/ 2255** | ☒ **H. Employment Discrimination** | ☐ **I. FOIA/PRIVACY ACT** | ☐ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ **K. Labor/ERISA (non-employment)** | ☐ **L. Other Civil Rights (non-employment)** | ☐ **M. Contract** | ☐ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

*42 USC 2000*

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*Title VII civil rights act of 1964, 42 U.S.C.; District of Columbia Human Rights Act & D.C. Code Ann § 2-1401.01 et Seq (DC HRA) Sexual Harassment & Retaliation/Fired For Reporting Sexual Harassment*

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23  **DEMAND $** *$350,000*  Check YES only if demanded in complaint  **JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES  ☒ NO  If yes, please complete related case form.

DATE *07/06/07*  **SIGNATURE OF ATTORNEY OF RECORD** *Joley Cooper*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.